IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSEPH DUNDON, et al, )
)
                      Plaintiffs, )
)
v. ) No. 01-408-GPM
)
U.S. BANK, NATIONAL ASSOCIATION, N.D., )
)
                      Defendant. )
)

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION TO OBTAIN A PRELIMINARY FAIRNESS DETERMINATION FOR
SETTLEMENT PURPOSES, ISSUANCE OF NOTICE TO THE CLASS,
AND SCHEDULING OF A HEARING ON FINAL APPROVAL**

I.     **BACKGROUND OF THE LITIGATION AND THE SETTLEMENT.**

For roughly the past three years, plaintiffs' class counsel have prosecuted second mortgage litigation across the United States against U.S. Bank, N.A., N.D. ("U.S. Bank") and other defendants. There are currently more than sixty (60) statewide class actions pending in state and federal courts in at least twelve (12) states. These cases collectively involve many thousands of class members who have asserted claims for alleged violations of state and federal lending, consumer and common laws regarding the charging of fees or interest arising from second mortgage loans that were ultimately acquired by U.S. Bank.

U.S. Bank has vigorously contested the asserted counts at every stage. Counsel for the parties have expended many thousands of hours and millions of dollars in prosecuting and defending these lawsuits. Thus, plaintiffs' claims have been subject to considerable judicial scrutiny.

This case was the first to proceed to class certification and resulted in this Court's order of March 28, 2003 certifying an Illinois class of borrowers with claims arising out of alleged violations of the Illinois Interest Act, 815 ILCS 205/4.1(a)f. U.S. Bank's petition for review was denied by the Seventh Circuit Court of Appeals. Shortly thereafter, the parties undertook settlement discussions aimed at possible resolution of the vast majority of pending claims against U.S. Bank across the United States. In July 2003, a three-day mediation produced the framework for just such a settlement. The parties then engaged in substantial additional discussions and negotiations over many months to finalize the complex settlement in the form outlined in the Settlement Agreement, Stipulation, and Release (hereafter "Agreement"). *See* Agreement submitted herewith.

Under the terms of the Agreement, the estimated amount of the total settlement is thirty million ($30,000,000), inclusive of costs and fees, with settlement proceeds to be paid to qualified Illinois class members. This settlement provides a substantial per person recovery of $26,773.76 for each class member.

## II.  SUMMARY OF THE SETTLEMENT.

The key provisions of the Agreement are as follows:

- As certified by the Court, the class will be comprised of all residents of the State of Illinois (1) who obtained second mortgage loans from FirstPlus Bank and/or First Plus Financial, Inc. with interest rates in excess of 8% and were charged additional fees, whether denominated as "points," "origination fees," or otherwise, in excess of 3% of the principal balance of the loan as calculated pursuant to the Illinois Interest Act; (2) whose loans were subsequently transferred or assigned to U.S. Bank, National Association, N.D.; and (3) (i)

whose last scheduled payment of the loan, after giving effect to any renewals or extensions was due after March 16, 1999, or (ii) if the total amount of the loan contract was fully paid, it was paid after March 16, 1999.

- U.S. Bank has agreed to a settlement with an estimated value of thirty million ($30,000,000) dollars under the terms of the Agreement and Settlement Matrix.
- Each class member will receive $26,773.76.
- The class plaintiffs will apply for incentive awards in the amount of three thousand ($3,000) dollars.
- U.S. Bank will pay an award of attorneys' fees to plaintiffs' class counsel in an amount not to exceed $6,926,166.16 dollars. Defendant further agrees to pay costs and expenses associated with both the prosecution of the case and the administration of this settlement in an amount no greater than $729,385.91 dollars as awarded by the Court.

### III. THE COURT SHOULD GRANT PRELIMINARY APPROVAL FOR A REASONABLE SETTLEMENT THAT WOULD FACE SUBSTANTIAL RISKS IF LITIGATION CONTINUED.

Preliminary approval rests on whether there is probable cause to give notice to the proposed settlement class. *See* Manual for Complex Litigation (Fourth) § 21.632 (2004). If the district court finds the settlement proposal "within the range of possible approval," class members are notified of the proposed settlement and the fairness hearing at which they and all interested parties have an opportunity to be heard. *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982) (citations omitted); *Armstrong v. Board of School Directors of City of Milwaukee,* 616 F.2d 305, 314 (7th Cir. 1980) (citing Manual for Complex Litigation § 1.46 (1977)),[1] *rev'd in part on other grounds by Felzen v. Andreas,* 134 F.3d 873 (7th Cir. 1998).

---

[1] *See now* Manual for Complex Litigation (Fourth) § 21.632-33 (2004).

3

Here, the settlement is within the range of reasonableness and should be approved. The determination of what is a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum:

> In any case, there is a range of reasonableness with respect to a settlement. A range which recognizes that uncertainties of law and fact exist and the competent risks and costs necessarily inherent in taking any litigation to completion.

*Rubenstein v. Republic Nat'l Life Ins. Company,* 74 F.R.D. 337, 347 (N.D. Tex. 1976). *See also Newman v. Stein,* 464 F.2d 689, 693 (2nd Cir. 1972). For example, in *Mexico Money*, the Seventh Circuit approved a settlement for coupons valued at between forty to sixty million ($40,000,000-$60,000,000) dollars to resolve claims where the potential damages "ran into the billions of dollars." *In re Mexico Money Transfer Litig.,* 267 F.3d 743, 745 (7th Cir. 2001). *See also In re Synthroid Mktg. Litig.,* 264 F.3d 712, 716 (7th Cir. 2001) ("The objectors contend that the settlement should have been larger, that the notice was not sufficient, and that the release of liabilities is too broad. Yet it seems to us, as it did to the district judge, that the settlement is generous in light of difficulties facing the class.")

To determine whether this settlement is reasonable, the Court should not focus on the potential damages at trial for the sorts of allegedly illegal lending practices that underlie the class claims. Rather, the focus should rest on the plaintiffs' likelihood of success: "one must ask whether the value of relief in the aggregate is a reasonable approximation of the value of plaintiffs' claim." *Mexico Money,* 267 F.3d at 748; *Uhl v. Thoroughbred Tech. and Telecomms., Inc.,* 309 F.3d 978, 987 (7th Cir. 2002). To weigh the value of plaintiffs' claims, the Court must look at the risk that the defendant will prevail on the merits, the dangers posed by the DIDMCA and NBA preemption and other defenses, and the likely damages to be obtained at trial.

## IV. THE PRELIMINARY FINDING OF FAIRNESS FOR THIS SETTLEMENT WILL ELIMINATE THE SUBSTANTIAL RISKS TO CLASS MEMBERS IN CONTINUED LITIGATION.

Absent any settlement here, the named plaintiffs will continue litigation against U.S. Bank in the Southern District of Illinois. U.S. Bank has steadfastly contested the claims against it and, in the event this settlement is not approved, it will have an opportunity to further test plaintiffs' theories. Plaintiffs' class counsel believe that in light of the substantial recovery provided by the settlement, continued litigation is fraught with risks and could very well result in a lower recovery or no recovery for much of the class.

To illustrate, class members face the risk that U.S. Bank will prevail in this Court on the merits. U.S. Bank contends that the actual lender for these loans was, in fact, FirstPlus Bank, not FirstPlus Financial, Inc., as argued by class counsel. FirstPlus Bank was, in fact, the stated obligor on the subject notes. According to defendant, FirstPlus Bank is entitled under § 521 of the Depository Institution Deregulation and Monetary Control Act of 1980 ("DIDMCA"), codified at 12 U.S.C. § 1831d, to lend money in other states at the same rates that it was entitled to charge in California. *See* Myers Aff. at ¶¶ 51-53. While this issue has not yet been resolved in any of class counsel's litigation activity to date, trial and appellate courts in Missouri have made favorable rulings to defendants on comparable issues, and a significant risk exists that if these loans are found to have been made by FirstPlus Bank, there will be no recovery for any class member impacted by that ruling.

In addition to the DIDMCA preemption defense, U.S. Bank has claimed that state lending law claims against it are preempted because it is a national bank and such claims are preempted by the National Banking Act. While this issue has not been decided in any of the litigation to date, there have been cases which cause plaintiffs concern in this regard, not the least of which is

5

the U.S. Supreme Court's decision in *Beneficial Nat. Bank v. Anderson,* 123 S.Ct. 2058 (2003). Although U.S. Bank has a series of other defenses from which it might succeed in narrowing plaintiffs' claims, the DIDMCA and NBA preemption defenses present a "silver bullet" that would have a catastrophic impact on the ability of any class member to recover against defendant. Other defenses relate to (1) statutes of limitations claims in respect to many loans of class members which were originated several years prior to the commencement of suits, (2) loans with savings clauses in the event charges are deemed excessive, (3) the fact that U.S. Bank was not the originator, (4) whether the Illinois Interest Act has been repealed, and (5) the fact that some of the loans acquired by U.S. Bank were acquired out of FirstPlus Financial's bankruptcy pursuant to a "free and clear of claims" court order, etc.

Class counsel further suggest that continued litigation presents an added risk that class members will recover amounts lower than those provided for in this settlement. No class member will receive a payment of less than $26,773.76. Recoveries of this sort are rare in the landscape of class litigation and demonstrate that class will obtain substantial relief. Given the size of the settlement amounts as reflected in the Settlement Matrix, continued litigation would raise the risk that U.S. Bank will get a future favorable ruling that could lower the value of any settlement to the class. On balance, the class faces more downside than upside to further litigation, particularly when application of DIDMCA and NBA preemptions threaten the viability of any such case against U.S. Bank.

## V.     THE CLAIMS PROCESS IS FAIR, JUST AND REASONABLE.

In establishing a claims process, the parties will utilize a concisely phrased claim form for the borrower and co-borrower. *See* Exhibit C attached to Agreement. The borrowers are asked to provide their name, current mailing address, and the last four digits of their social

6

security numbers. In the event that a class member was a party to a bankruptcy proceeding after the loan was obtained, that borrower will provide the name and address of the trustee so that a settlement administrator may determine who holds the claim. The borrower and any co-borrower will sign the documents before a notary public, an important protection against fraud or payment of ineligible persons in light of the substantial settlement payments provided for in this class resolution.

Notably, all borrowers who have active loans, and thus whose current whereabouts are known, will not have to submit a claim form. U.S. Bank can ascertain a current borrower's name and address, and if an active borrower does not choose to opt-out of the settlement, he or she will simply receive a check for $26,773.76, subject to being endorsed by all co-borrowers.

The parties have also selected L. Stephens Tilghman as the settlement administrator. Mr. Tilghman, of Tilghman & Company, P.C., in Birmingham, Alabama, is an experienced administrator from numerous prior class settlements. *See* Tilghman Affidavit submitted herewith. Mr. Tilghman's notice plan, attached to the Agreement as Exhibit D1, provides for actual notice to the class. Class counsel have proposed two forms of actual notice, one that will go to inactive borrowers and require submission of a claim form, and another that will go to active borrowers that will not require the submission of a claim. *See* Exhibits D2 (active notice) and D3 (inactive notice) attached to Agreement. The notices clearly and concisely explain the terms of the settlement and the rights of the class members.

## VI. CONCLUSION.

For the foregoing reasons, plaintiffs and class counsel respectfully request that the Court for the preliminary fairness of the settlement, approve the forms and manner of notice, and

schedule a final hearing on approval.

DATED: May /7, 2004

 

*Evan D. Buxner*
Evan D. Buxner
WALTHER-GLENN LAW ASSOCIATES
1034 S. Brentwood, Suite 1300
St. Louis, MO 63117
314-725-9595  Fax: 314-725-9597

Daniel O. Myers
T. Christopher Tuck
RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, LLC
1037 Chuck Dawley Blvd., Bldg-A
Mount Pleasant, SC 29464
843-727-6500 Fax: 843-216-6509

James J. Rosemergy
THE DAVID DANIS LAW FIRM, L.L.C.
8235 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
314-725-7700 Fax: 314-721-0905

Eric G. Calhoun
LAWSON, FIELDS & CALHOUN, P.C.
14135 Midway Road, Suite 250
Addison, TX 75001
972-490-0808 Fax: 972-490-9545

*Attorneys for Plaintiffs Dundon, et al. and the Class*